UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHILIPS LIGHTING COMPANY, a Division of
Philips Electronics North America Corporation

       Plaintiff,

    — against —

BARRY A. SCHNEIDER,

       Defendant.
------------------------------------------------------------X

**MEMORANDUM and ORDER**

05-CV-4820 (SLT)(MDG)

**TOWNES, United States District Judge:**

  Philips Lighting Company filed this action against Barry Schneider ("Barry"), a guarantor of Eltron Supply, Ltd., to recover a debt on which Eltron had defaulted. Barry Schneider's co-guarantor, Theodore Schneider, was released from his liability under the guarantee agreement during bankruptcy proceedings of Eltron. In a motion for summary judgment, Barry argues that the release of Theodore released him as well pursuant to section 15-105 of the New York General Obligations Law. In a cross-motion for summary judgment, Philips argues that Barry was not released and, in the alternative, that he was released from only half of his liability. Philips also argues that Barry's guarantee agreement waived the defense of release of a co-guarantor.

## BACKGROUND

  On March 14, 1985, Barry Schneider executed a guarantee in favor of North American Philips Lighting Corp., a predecessor in interest to Philips Lighting Company  The guarantee agreement made Barry, an executive at Eltron, liable for debt incurred by Eltron in the purchase of inventory from Philips. Barry's brother, Theodore Schneider, also an executive at Eltron, executed an identical guarantee on the same day.

Eltron defaulted on a debt of $578,635.14 for inventory that it had purchased from Philips. On December 16, 2002, Eltron filed for bankruptcy under Chapter 11. The bankruptcy court set a deadline of September 8, 2003, for the submission of proofs of claim against Eltron (Spector Cert. Opp., Exh. 2, pp. 2–3), and Barry failed to submit a timely claim. During the bankruptcy proceedings, a committee of unsecured creditors was formed, and Philips was represented on the committee. On April 28, 2004, the creditors' committee filed with the bankruptcy court a stipulation and settlement between the creditors' committee and the Schneider parties. The phrase "Schneider parties" included Theodore Schneider and members of his immediate family who had been employed by Eltron, but it did not include Barry Schneider. Under the settlement, the Schneider parties agreed to pay $400,000 to the Eltron estate. (Def. Exh. F, p. 3.) The settlement was conditioned upon the entry of an injunction by the bankruptcy court barring all claims against the Schneider parties. (Def. Exh. F, p. 4.) On July 2, 2004, the bankruptcy court confirmed the Eltron plan of reorganization and discharged the Schneider parties from liability:

> The Debtor's estate is hereby deemed to generally release any and all claims, liabilities, and damages of any kind or nature which the estate has, had or may have against Theodore Schneider, and/or Mitchell Schneider, and/or David Schneider, and/or Dominique Schneider, and/or the Dino Trust (collectively, the "Schneider Parties") from the beginning of the world to the Confirmation Date, other than the obligations of the Schneider Parties under the Bankruptcy Court Stipulation entered on April 28, 2004. Pursuant to the provisions of the Plan and § 105 of the Bankruptcy Code, any and all Claims that could be heretofore or hereafter asserted by any person or entity, against the Schneider Parties arising out of the Debtor's business, affairs, assets or interests of any kind . . . are hereby deemed released, and such claims against the Schneider Parties are deemed released, expunged, null and void and all such claimants . . . are hereby permanently enjoined from asserting, pursuing or enforcing such

> Claims. Any and all releases hereunder are conditioned upon
> complete and timely compliance of all terms and conditions of any
> settlements with the Debtor's estate, including without limitation
> the Maximum Settlement and the Schneider Settlement,
> respectively.

(Def. Exh. G, p. 9.) No reservation of rights regarding Barry Schneider was entered. Philips did not object to the plan when the bankruptcy court solicited acceptances of and objections to the plan from the class of unsecured creditors.

Philips later filed the present action against Theodore and Barry Schneider, but Philips voluntarily dismissed the claim against Theodore. Philips and Barry have filed cross-motions for summary judgment, which are now considered jointly.

## STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the movant meets this burden, the non-movant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot "'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *W. World*, 922 F.2d at 121 (citations omitted). Moreover, the disputed facts must be material to the issue in the case in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When no rational jury could

3

find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

**DISCUSSION**

The discussion is divided in four parts. First, the guarantee agreement of Barry Schneider did not waive the defense of release of a co-guarantor. Second, the release of Theodore Schneider triggered the application of section 15-105 of the New York General Obligations Law. Third, the release of Theodore relieved Barry of half of his liability pursuant to section 15-105. Fourth, plaintiffs' damages are calculated.

*A.     The Guarantee Agreement of Barry Schneider Did Not Waive the Defense of Release of a Co-Guarantor.*

Before determining whether the release of Theodore Schneider during the bankruptcy proceedings also released, in whole or in part, Barry Schneider pursuant to section 15-105 of the New York Obligations Law, the Court must decide whether the guarantee agreement executed by Barry waived the defense of release of a co-guarantor. Philips argues that the guarantee agreement waived any such defense, but it does not.

The guarantee agreement provided:

> For value received and the further consideration of any credit North American Philips Lighting Corporation (hereinafter "Obligee") may extend hereunder, (I) (We) (hereinafter "Guarantor(s)") do hereby *absolutely and unconditionally* guarantee the full and punctual payment to Obligee of all indebtedness which Eltron Supply Ltd. Inc. . . . (hereinafter "Obligor") has incurred or may incur for the purchase of merchandise from Obligee, together with all expenses of collection and reasonable counsel fees incurred by Obligee by reason of

4

> default in payment of such indebtedness. *The liability of the undersigned Guarantors hereunder shall not be affected by the amount of credit extended hereunder, nor by any change in the form of said indebtedness, by note or otherwise, nor by any extension of credit hereunder, of default in payment, of change in form, of renewal or extension of any of said indebtedness, or of any matter with respect hereto, is expressly waived.* This guarantee shall continue in full force and effect until such time as Obligee shall receive from the undersigned Guarantors written notice of revocation, and such revocation shall not in any way relieve the undersigned from liability for any indebtedness incurred prior to the actual receipt by Obligee of said notice.
>
> North American Philips Lighting Corporation shall have the right to proceed against Guarantors, or any of them, immediately upon default by the Obligor in payment or performance of any obligations and shall not be required to take any action or proceedings of any kind against the Obligor or any other party liable for the Obligor's debts or obligations or any security which Obligee may hold.

(Def. Exh. A (emphases added).)

Under New York law, guarantee agreements must be construed *strictissimi juris*, which requires the Court to "protect the surety against a liability which is not strictly within the terms of the [guarantee] contract." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 34 (2d Cir. 1999) (alteration in original) (quoting *People v. Stuyvesant Ins. Co.*, 413 N.Y.S.2d 843, 847 (Sup. Ct. 1979)). "Although this standard mandates that the 'obligations undertaken by the guarantor are to be strictly applied,' this application occurs only 'after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction.'" *Id.* (quoting *Banco Portugues do Atlantico v. Asland, S.A.*, 745 F. Supp. 962, 967 (S.D.N.Y. 1990)).

A guarantor may consent in a guarantee agreement to remain liable for the full amount of the guarantee even if the creditor releases the principal debtor or a co-guarantor from its

5

obligations. *Id.* at 35 (citing *Banco Portugues*, 745 F. Supp. at 968; 63 N.Y. Jur. 2d, Suretyship and Guaranty § 207 (1987)). To waive the defense of release of a co-guarantor, the guarantee agreement does not need to mention the defense specifically. *Id.* The New York courts have, for example, found a waiver of the defense of release when the guarantee agreement contained general language waiving all defenses. *United Orient Bank v. Lee*, 637 N.Y.S.2d 96, 96 (App. Div. 1996); *Gannett Co. v. Tesler*, 577 N.Y.S.2d 248, 249 (App. Div. 1991).

Philips argues that the guarantee agreement waived the defense of release because it stated that the guarantee was "absolute and unconditional." This Court disagrees and concludes that an absolute and unconditional guarantee must contain more specific language to waive the defense of release. The Second Circuit has held that "the mere general recitation that a guarantee is 'absolute and unconditional' is insufficient . . . to bar a defense of fraudulent inducement" and explained that "the touchstone is specificity." *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993). New York precedent supports the conclusion that this requirement of specificity applies to waivers of defenses generally and is not limited to waivers of the defense of fraudulent inducement. In finding waivers of various defenses, the New York courts have relied substantially on specific language in the guarantee agreements at issue even though the agreements contained the phrase "absolute and unconditional." *See, e.g.*, *Chemical Bank v. Sepler*, 60 N.Y.2d 289, 294 (1983) (defense of cessation of the underlying business relationship); *FDIC v. Schwartz*, 432 N.Y.S.2d 899, 901 (App. Div. 1980) (defense of laches and failure of the creditor to collect from the debtor before the guarantor).

Similarly, in *Compagnie*, the Second Circuit did not simply rely on the use of the term "unconditional" in the guarantee agreement when it found a waiver of the defense of release of

6

the debtor. First, the court highlighted that the agreement explicitly waived "all legal or equitable . . . defense[s]." *Compagnie*, 188 F.3d at 36 (omission and alteration in original). Second, the court emphasized that the guarantee agreement explicitly maintained liability "in the absence of any action to enforce [the Loan Agreement]." *Id.* at 37 (alteration in original). The court explained that, because the guarantee agreement stated that the debtor was permitted to proceed against the guarantor without first proceeding against the debtor, the guarantor accepted the risk of paying in full and then chasing the debtor for reimbursement. *Id.* at 36–37. *Compagnie*, like *Yanakas* and New York precedent, suggests that the proper approach is a case-specific analysis of the entire guarantee agreement rather than a reliance on particular magic words.

Apart from the phrase "absolutely and unconditionally," which is insufficient to effect a waiver of the defense of release, the plain language of the guarantee agreement provides no support for such a waiver. The agreement expressly waives defenses related to the credit extended under the agreement and the indebtedness of Eltron, but it does not mention the relationship between co-guarantors. Furthermore, the catch-all phrase "or of any matter with respect hereto" is most fairly read as referring to matters related to the credit extended in the agreement and the indebtedness of Eltron; it cannot be read as a broad waiver of all defenses.

**B.**     *The Release of Theodore Schneider Triggered the Application of Section 15-105 of the New York General Obligations Law.*

The parties dispute whether the release of Theodore Schneider in the bankruptcy proceeding without a reservation of rights effected a release of Barry Schneider under section 15-105 of the New York General Obligations Law. Philips argues that section 15-105 does not apply because the creditors' committee, rather than Philips itself, negotiated the stipulation and settlement. Under the narrow circumstances of this case, the Court disagrees.

Section 15-105 provides that the release of a guarantor by a creditor without a reservation of rights effects at least a partial release of any co-guarantor if the creditor knew or had reason to know that the released guarantor did not pay his share of the claim:

> 1. If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor, then knows or has reason to know that the obligor released or discharged did not pay so much of the claim as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay.
>
> 2. If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know, the obligee's claim against the co-obligor shall be satisfied to the extent of the lesser of two amounts, namely (a) the amount of the fractional share of the obligor released or discharged, or (b) the amount that such obligor was bound by his contract or relation with the co-obligor to pay.

N.Y. Gen. Oblig. Law § 15-105. The relevant issue in the present case is whether the release of Theodore Schneider should be attributed to Philips.

In a Chapter 11 bankruptcy proceeding, a creditors' committee negotiates the plan of reorganization on behalf of the class of creditors. *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006). "[T]he members of an official committee owe a fiduciary duty to their

constituents – in the case of an official creditors' committee, to all of the debtor's unsecured creditors." *Id.* (citing *The Bohack Corp. v. Gulf & W. Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n.4 (2d Cir. 1979)). Ordinarily, a creditors' committee may not bind its constituents or its members. *Id.* at 197 (citing *In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005); 7 Collier on Bankruptcy ¶ 1103.05[1][d][i], at 1103–26 (15th ed. 2005)). After the creditors' committee negotiates a plan on behalf of the creditors, the individual creditors usually submit acceptances or objections, which the court takes into account when it decides whether to confirm the plan. *See* 7 Collier on Bankruptcy ¶ 1103.05[1][d][i] (15th ed. 2008).

Barry Schneider argues that Philips should be deemed to have released Theodore because Philips was a member of the creditors' committee. This argument fails. As a member of the creditors' committee, Philips owed a fiduciary duty to the entire class of unsecured creditors, not to any particular creditor. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992).

Nonetheless, Philips has released Theodore under the terms of section 15-105. The creditors' committee negotiated the plan on behalf of the unsecured creditors, including Philips, as a fiduciary of that class, and the plan did not include a reservation of rights. Philips did not object when the court solicited from the unsecured creditors acceptances of and objections to the plan. Under these circumstances, Philips is deemed to have released Theodore and subjected itself to the consequences of section 15-105 as they pertain to Barry. Philips may not sit idly by while the committee of unsecured creditors negotiates the release of Theodore on its behalf, fail to object in bankruptcy court to the lack of a reservation of rights against Barry when given the opportunity to do so, and then maintain that it should not be held responsible for executing the

9

release without a reservation of rights. Philips is responsible for the legal consequences that would have flowed from the release had Philips negotiated the release itself. As a result, section 15-105 applies.

Philips argues, however, that 11 U.S.C. § 524(e), which provides that "discharge of a debt of the debtor [in a bankruptcy proceeding] does not affect the liability of any other entity on, or the property of any other entity for, such debt," prevents the release of Barry as a consequence of the release of Theodore. This argument fails. It was the conduct of Philips, not the action of the court, that effected the release of Barry. Barry was released pursuant to section 15-105 because Philips allowed the creditors' committee to negotiate on its behalf and then failed to object when given the opportunity to do so.

C. *The Release of Theodore Schneider Relieved Barry Schneider of Half of His Liability Pursuant to Section 15-105 of the New York General Obligations Law.*

Having determined that Philips released Theodore Schneider pursuant to section 15-105, this Court now concludes that Barry Schneider is relieved of half of his guarantee and remains liable for half. In the absence of an agreement to the contrary, when a guarantor is released under section 15-105 co-guarantors are relieved of liability for the proportional share of the released guarantor. *Newburger v. Lubell*, 193 N.E. 440, 442 (N.Y. 1934); *U.S. Printing & Lithograph Co. v. Powers*, 135 N.E. 225, 228 (N.Y. 1922); *Morgan v. Smith*, 70 N.Y. 537, 542 (1877); *Cove Hollow Realty Corp. v. 1426 Third Ave. Corp.*, 603 N.Y.S.2d 454, 455 (App. Div. 1993); *see also FDIC v. Chizner*, 110 F.R.D. 114, 116 (E.D.N.Y. 1986). As a result, the release of Theodore reduced the liability of Barry by half. *Id.* The parties do not dispute that Philips knew or had reason to know that Theodore had not made a payment under the guarantee. *See* N.Y. Gen. Oblig. Law § 15-105(1).

10

It is not necessary to consider here the effect of the release of Eltron on the liability of Barry because, by the time of Theodore's release, Barry was precluded from proceeding against Eltron. The bankruptcy court set a deadline of September 8, 2003, for the submission of proofs of claim against Eltron, and Barry failed to submit a timely claim. The negotiation of the release of Theodore by the creditors' committee and the confirmation of the plan by the bankruptcy court occurred in 2004, well after Barry no longer had any recourse against Eltron.

Barry Schneider relies on *CDS Capital, LLC v. Young*, 811 N.Y.S.2d 119 (App. Div. 2006), and *Stasyszyn v. Sutton East Associates*, 623 N.Y.S.2d 879 (App. Div. 1995), to argue that the release of Theodore relieved Barry of his entire liability. Both cases, however, are distinguishable. In *CDS Capital*, a husband and wife who were the officers and shareholders of a trucking company executed a promissory note cosigned by the husband, the wife, and the company. 811 N.Y.S.2d at 121. The court held that the release of the company and husband in bankruptcy relieved the wife of all liability on the promissory note under section 15-105. *Id.* at 122. In *CDS Capital*, however, unlike in the present case, the wife was entitled to full reimbursement by the company for any payments under the promissory note. *Id.* In contrast, Barry Schneider is entitled to a release of only half of his liability because Theodore was obligated to reimburse Barry for only half of any payments under the guarantee.

Similarly, the full release of liability in *Stasyszyn* resulted from the release of an obligor that was required to reimburse the co-obligor for the full amount of any payment. In *Stasyszyn*, a landlord and tenant agreed that the tenant would vacate her rent-stabilized room for two years. 623 N.Y.S.2d at 879. In return, the landlord agreed to pay the tenant $36,000, renovate the room, and restore the tenant to the room at the end of the two year period. *Id.* The landlord,

11

however, sold the building before the two year period expired, making the first owner a surety to the subsequent owners' performance. *Id.* The subsequent owners did not honor the agreement even though it ran with the land. *Id.* Because the first owner had not breached the agreement when it sold the building, the first owner was entitled to full reimbursement of any payment from the subsequent owners. *Id.* As a result, when the tenant settled with the subsequent owners without reserving her rights against the first owner, the obligations of the first owner were discharged pursuant to section 15-105. *Id.* In the present case, Barry Schneider did not have a similar right to full reimbursement from Theodore.

### D. *Calculation of Damages*

Philips requests $578,635.14 for the debt of Eltron, pre-judgment interest of 9% per annum, and $35,781.54 in counsel fees. Barry Schneider does not dispute these figures. Because Barry Schneider remains liable for only half of the debt of Eltron, $289,317.57 is awarded for the debt. Because the guarantee agreement obligates Barry Schneider to pay reasonable counsel fees, $35,781.54 is awarded in counsel fees. In New York, annual pre-judgment interest of 9% is appropriate for claims asserting a breach of contract. N.Y. C.P.L.R. 5001, 5004. Philips requests pre-judgment interest from October 3, 2003, after Eltron filed for bankruptcy. Barry does not challenge the use of this date for the calculation of pre-judgment interest. Pre-judgment interest is awarded at a rate of 9% per annum from October 3, 2003, until the date of entry of judgment.

## CONCLUSION

For the reasons set forth above, the cross-motion of plaintiff, Philips Lighting Company, for summary judgment is **granted**. Defendant, Barry A. Schneider, is liable to Philips Lighting

Company in the amount of $289,317.57, plus $35,781.54 in attorney's fees, plus 9% interest per annum from October 3, 2003, until the date of entry of judgment. The motion of Barry A. Schneider for summary judgment is **denied**. The Clerk of Court is directed to enter judgment consistent with the foregoing and to close this case.

Dated: Brooklyn, New York
September 30, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge